**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN P. BEACH, SR.,**

                      **Plaintiff,**                       **7:13-cv-323**
                                                                **(GLS)**

                    v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Conboy, McKay Law Firm<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | KATRINA M. LEDERER<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. **Introduction**

Plaintiff Kevin P. Beach, Sr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)[1] After reviewing the administrative record and carefully considering Beach's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. **Background**

On May 3, 2010, Beach filed an application for DIB under the Social Security Act ("the Act"), alleging disability since July 6, 2009. (Tr.[2] at 79, 172-78.) After his application was denied, (*id.* at 80-85), Beach requested a hearing before an Administrative Law Judge (ALJ), which was held on August 12, 2011, (*id.* at 45-78, 86-87). On January 10, 2012, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 12-29.)

Beach commenced the present action by filing his complaint on

---

[1] Because no application for Supplemental Security Income (SSI) appears in the record and it is otherwise clear that Beach's request for review pertains only to his application for DIB, the court ignores the mistaken reference to SSI in his complaint. (Compl. ¶ 2.)

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

March 21, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. Contentions

Beach contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 15-24.) Specifically, Beach claims that the ALJ erred in: (1) developing the record; (2) evaluating his impairments under listing 1.04; (3) applying the treating physician rule; and (4) rendering his residual functional capacity (RFC) determination. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 11 at 5-11.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 1-15; Dkt. No. 11 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a

full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Development of the Record

First, Beach argues that the ALJ neglected his duty to fully develop the record by failing to hold the record open for a sufficient amount of time, and failing to obtain additional records from Beach's treating sources. (Dkt. No. 10 at 15-18.) The Commissioner counters, and the court agrees, that the ALJ fulfilled his duty to develop the record, and, further, the record was sufficiently robust to allow the ALJ to render a determination. (Dkt. No. 11 at 5-7.)

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months

4

preceding the month in which" the claimant files his application). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Here, because the record was sufficiently robust for the ALJ to make a disability determination, he was not obligated to further develop the record by either: (1) holding the record open for receipt of additional medical records; or (2) obtaining "updated statements" from Beach's treating physicians. (Dkt. No. 10 at 15-16); *see Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011). In particular, the ALJ had before him Beach's extensive treatment records, objective medical evidence, including x-rays and MRIs, and a medical expert's opinion with regard to Beach's functional capabilities. (*See generally* Tr. at 256-448.) Further, the ALJ held the record open for three weeks following the administrative hearing, to permit Beach's counsel the

opportunity to obtain medical source statements from Beach's treating sources.  (*Id.* at 48.)  Thereafter, Beach's counsel submitted updated treatment notes from treating physician John Krawchenko, who performed Beach's two back surgeries, as well as a recent MRI of Beach's lumbar spine.  (*Id.* at 242-43, 365-67, 449-54, 511-13.)  Beach's counsel also informed the ALJ that Dr. Krawchenko would not complete an "[RFC] form," but that his treatment notes contained his opinion with respect to Beach's functional limitations.  (*Id.* at 242.)  Subsequently, Beach's counsel submitted additional treatment records from Dr. Krawchenko as well as physical therapy treatment notes.  (*Id.* at 244-45, 455-61.)  On September 8, 2011 Beach's counsel informed the ALJ that the record was complete and requested he make a fully favorable decision on the evidence before him.  (*Id.* at 245.)  Thereafter, the ALJ obtained the medical source statement of non-examining medical expert Thomas Weiss.  (*Id.* at 246-47, 462-80.)[3]  After reviewing Dr. Weiss' medical source statement, Beach's

---

[3] Beach argues that Dr. Weiss completed his medical source statement without reviewing the updated treatment records.  (Dkt. No. 10 at 17.)  He bases his argument on the ALJ's declaration that all of the medical documents submitted after the administrative hearing were part of the interrogatory sent to Dr. Weiss.  (*Id.*; Tr. at 252.)  According to Beach, as "[t]he ALJ does not state the same regarding Dr. Weiss'[ m]edical [s]ource [s]tatement[,] it appears Dr. Weiss did not review all relevant medical evidence in the [r]ecord before issuing his opinion."  (Dkt. No. 10 at 17.)  Semantics aside, it is clear from the ALJ's November 14, 2011 letter and the request for interrogatory sent to Dr. Weiss, which contained the medical

6

counsel again requested the ALJ make a fully favorable finding on the record before him, or, in the alternative, hold the record open for the results of Beach's scheduled back surgery. (*Id.* at 170-71.)

In this instance, the ALJ made considerable efforts to fully develop the administrative record, and the record fails to disclose any critical gaps. The court notes that the lack of a medical source statement from a treating physician, will not, by itself, necessarily render the record incomplete. *See* 20 C.F.R. § 404.1513(b)(6); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). Even if the ALJ erred in failing to obtain treatment notes subsequent to Beach's November 2011 back surgery, Beach submitted a postoperative treatment note to the Appeals Council, after the ALJ rendered his decision, which indicates that Beach experienced improvement after the surgery and was pleased with the results. (Tr. at 510.) For the foregoing reasons, the court is satisfied that further development of the record was unnecessary.

**B.     Listing 1.04**

Next, Beach contends that the ALJ erred in failing to find that Beach

---

source statement questionnaire, that Dr. Weiss had the benefit of all of the medical documents submitted to the ALJ, prior to completing the medical source statement. (Tr. at 252, 462-72.)

7

has an impairment or combination of impairments which meet or medically equal listing 1.04. (Dkt. No. 10 at 18-19.) According to Beach, the November 28, 2011 postoperative examination note of record demonstrates the clinical findings required to meet listing 1.04(A). (*Id.* at 19.) On the other hand, the Commissioner argues that the diagnostic images of record fail to reveal evidence of nerve root compression, and, thus, Beach's impairments do not satisfy the requirements of listing 1.04(A). (Dkt. No. 11 at 7-9.) Again, the court agrees with the Commissioner.

If a claimant's "impairment(s) meets or equals a listed impairment" and "meets the duration requirement," he will be found disabled. 20 C.F.R. § 404.1520(d). To satisfy listing 1.04(A), a claimant must show that he suffers from a spinal disorder resulting in compromise of a nerve root or the spinal cord with evidence of: (1) nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss accompanied by sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

Here, in August 2011, Dr. Krawchenko reviewed Beach's July 2011

8

lumbar spine MRI and explained that, although he suffered a disc herniation, there was no nerve root compression or significant displacement. (Tr. at 453, 455.) Further, while the medical record shows some instances of muscle weakness in Beach's lower extremities, the clinical findings were not present on a continual basis, and, indeed, Beach's November 28, 2011 treatment note reveals "good strength on muscle testing." (*Compare id.* at 281, 358, 372, 375, 378-79, 400, 434, 449, 510, *with id.* at 451, 455, 509.) Thus, even if the results of Beach's November 28, 2011 examination demonstrated that his spinal disorder is accompanied by neuro-anatomic distribution of pain, limitation of motion of the spine, sensory loss, and positive straight leg raise tests, (Dkt. No. 10 at 19), he failed to prove the existence of other specified medical criteria required under the listing. *See* 20. C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). In fact, in order to qualify for listing severity, the claimant must show that he meets all the requirements of the listing consistently. *See Evans v. Astrue*, No. 12-CV-6002, 2012 WL 6204219, at *3-4 (W.D.N.Y. Dec.12, 2012). Accordingly, the court affirms the ALJ's step-three

9

determination that Beach's lumbar impairment did not meet listing 1.04(A).[4] (Tr. at 18.)

## C. Treating Physician Rule

Beach also argues that the ALJ erred in applying the treating physician rule. (Dkt. No. 10 at 19-22.) Specifically, Beach claims that the ALJ erred in failing to give the opinions of Drs. Krawchenko and Owen controlling weight, as such opinions were uncontradicted by other substantial evidence. (*Id.* at 20-21.) Further, Beach contends that the ALJ failed to provide good reason, considering the regulatory factors, for the weight afforded the opinions of Drs. Krawchenko and Owen. (*Id.* at 21-22.) The court disagrees.

Controlling weight will be given to a treating source's opinion on the

---

[4] To the extent that Beach's arguments can be construed as a contention that his cervical spine impairment meets listing 1.04(A), (Dkt. No. 10 at 19), the court notes that a May 2010 MRI, taken after Beach's neck surgery, revealed no spinal cord compression. (Tr. at 360.) Additionally, although the record shows that, prior to Beach's July 2009 neck surgery, he exhibited some diminished strength, sensation, and range of motion, these clinical findings were not consistent. (*Id.* at 358, 362-64, 368-75, 378.) For example, on June 4, 2009, treating physician Michael Owen, who performed Beach's neck surgery, noted that Beach had good strength in his bilateral biceps, triceps, and deltoids, as well as good grip strength, and intact and symmetrical reflexes. (*Id.* at 362-64, 375.) On June 22, 2009, Dr. Owen found "some mild right triceps and possibly right biceps weakness," but deep tendon reflexes were "normoactive symmetrically" in Beach's upper extremities, and no "anatomic areas of sensory loss" were demonstrable. (*Id.* at 372.) Further, on his first postoperative visit in July 2009, Beach reported no arm pain, numbness, or tingling, and he had good strength in his upper extremities on examination. (*Id.* at 371.) Thus, the ALJ's determination that Beach's cervical spine impairment does not meet the requirements of listing 1.04(A) is supported by substantial evidence. (*Id.* at 18.)

nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must provide "good reasons for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted).  "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Id*. (internal quotation marks and citation omitted).

Here, the ALJ gave "little weight" to the opinion of Dr. Krawchenko, that Beach "is totally disabled from any type of gainful occupation."  (Tr. at

11

22, 452, 455-56.) The ALJ explained that he discounted Dr. Krawchenko's opinion because it is on an issue reserved to the Commissioner, and, further, Dr. Krawchenko's examination findings were inconsistent with the diagnostic imaging, his treatment course, and the findings in Beach's physical therapy treatment notes. (*Id.* at 22); *see* 20 C.F.R. § 404.1527(c)(2), (4), (d)(1), (3). Thus, it is clear that the ALJ properly applied § 404.1527(c), and his assessment of Dr. Krawchenko's opinion is legally sound. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

Beach's argument that the ALJ's decision to give less than controlling weight to Dr. Krawchenko's assessment is not supported by substantial evidence[5] is similarly unavailing. (Dkt. No. 10 at 20.) Indeed, Dr. Krawchenko examined Beach in May 2009, almost two months prior to Beach's alleged onset date, and noted that Beach was in no acute distress with a normal gait, and good strength in his lower extremities. (Tr. at 377.) However, Beach did have some mild to moderate lumbar spasms on

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

12

palpation, tenderness on palpation, and a "[m]inimally positive straight leg raise on the right." (*Id.*) Notably, Beach was working as a bartender at this time. (*Id.* at 53-55.) Dr. Owen performed an anterior cervical discectomy and fusion on July 6, 2009—Beach's alleged onset date. (*Id.* at 362-64.) As the ALJ pointed out, Beach's medical records show improvement following the surgery, with Beach reporting in November 2009 that he was feeling much better with only occasional stiffness and no arm pain, numbness, or tingling. (*Id.* at 20, 368-71.) Thereafter, in May 2010, Dr. Owen examined Beach who reported that "his low back has been doing very well," although he was experiencing neck pain. (*Id.* at 358.) Beach was noted to be in no acute distress, with good strength in his upper and lower extremities, and a negative Tinel's sign in his upper extremities, but a reduced range of motion of his head and neck. (*Id.*)

Subsequently, in September 2010, Beach fell off of a ladder while installing storm windows, and returned to Dr. Krawchenko complaining of increasing pain in his neck and back. (*Id.* at 449.) Upon examination, Beach was found to be in moderate discomfort, with tenderness and muscle spasms. (*Id.*) He had limited range of motion of his neck and lower back, and pain with straight leg raising to ninety degrees on the right,

13

but his motor exam was normal.  (*Id.*)  Beach did not treat with Dr. Krawchenko again until July 2011, when he found Beach to suffer diminished range of motion of his back and neck, positive straight-leg raising, and diminished sensation and weakness in the right lower extremity.  (*Id.* at 451-52.)  In August 2011, Dr. Krawchenko reviewed Beach's MRI, which revealed a "[s]mall disc herniation at L5-S1, not compressing or displacing neural elements," and recommended Beach attend physical therapy for his legs and back, as surgery only had a "50/50 chance" of relieving his symptoms.  (*Id.* at 453-55.)  Beach's physical therapy treatment records reveal that he quickly progressed, with no more than minimal loss of movement in his back by August 26, 2011.  (*Id.* at 457-60.)  Beach underwent a second back surgery in November 2011, and thereafter reported a decrease in his back and right leg symptoms.  (*Id.* at 510-13.)  In sum, the treatment records and diagnostic images of record support the ALJ's decision to discount Dr. Krawchenko's opinion that Beach was totally disabled.  (*Id.* at 22.)

Turning to Dr. Owen, Beach argues that the ALJ failed to state what weight he afforded Dr. Owen's opinion.  (Dkt. No. 10 at 20.)  However, the court could not locate a medical opinion authored by Dr. Owen in the

14

record.  Notably, Beach does not provide a citation to the supposedly-overlooked opinion, and, instead, cites to an April 2007 treatment record in which Dr. Owen noted Beach's complaints that his low back and left leg pain "affect the quality of his life and the things that he can and [cannot] do.  He is able to continue to work but in terms of free time[,] of . . . doing anything enjoyable after work, it seems that he . . . rests and takes it easy just to go back to work."  (Tr. at 388; Dkt. No. 10 at 20.)  Clearly this is not an assessment of Beach's functional limitations, but, rather, a notation of Beach's subjective complaints.  Further, as the Commissioner aptly notes, this treatment record was penned over two years prior to Beach's alleged onset date, and two months prior to Beach's first back surgery.  (Tr. at 365-67, 388; Dkt. No. 11 at 10.)  Notably, after his June 2007 back surgery, Beach reported decreased pain and, by September 2007, requested a release from Dr. Krawchenko to return to work, which was granted.  (Tr. at 383-85.)  Thus, Beach's arguments with respect to Dr. Owen's opinion are without merit.

Beach also argues that the ALJ erred in granting "great weight" to the opinion of Dr. Weiss.  (Dkt. No. 10 at 21.)  Dr. Weiss opined that Beach can occasionally lift and carry up to fifty pounds, and frequently ten

15

pounds. (Tr. at 477-80.) According to Dr. Weiss, Beach can sit, stand, and walk for six hours a day respectively, and can occasionally perform postural activities. (*Id.* at 477-78.) The ALJ gave Dr. Weiss' opinion "great weight," because he had the opportunity to review all of the medical evidence of record, which supports his opinion. (*Id.* at 22.) Contrary to Beach's assertions, (Dkt. No. 10 at 22), "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Florez v. Apfel*, No. CV 97-3052, 1998 WL 760334, at *6-7 (E.D.N.Y. Aug. 31, 1998) ("Given that [the medical expert's] opinions are supported by the record, and [the treating physician's] opinion that the [claimant] was disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive.").

### D. RFC Determination

Finally, Beach contends that the ALJ failed to properly calculate his

RFC. (Dkt. No. 10 at 22-24.) According to Beach, as Dr. Weiss' medical source statement failed to indicate any limitations for Beach's use of his hands or feet, and failed to indicate how often Beach would need to change positions between sitting, standing, and walking, his opinion cannot constitute substantial evidence to support the ALJ's RFC determination. (*Id.* at 23.) Again, the court disagrees.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Beach can lift no more than fifty pounds, and frequently lift and carry ten pounds. (Tr. at 19.) Further, the ALJ concluded that Beach can sit, stand, and walk for up to six hours in a work day, and only occasionally balance, bend, stoop, kneel, crouch, crawl, and climb. (*Id.*) Dr. Weiss' opinion indicates that Beach can sit, stand, and

17

walk for up to six hours without interruption.  (*Id.* at 477.)  Thus, although Beach may disagree with Dr. Weiss' opinion in this regard, it clearly supports the ALJ's RFC determination.  (Dkt. No. 10 at 23.)  Additionally, although Dr. Weiss did not indicate any limitations for reaching, handling, fingering, feeling, pushing, pulling, or operating foot controls, (Tr. at 478), no treating, examining, or consulting physician opined that Beach lacks such functional capacities.  Rather, consultative examiner Robert Athanasiou opined that Beach suffers no limitation in his ability to reach or handle objects, based upon his examination results, which revealed intact hand and finger dexterity, 5/5 grip strength, and 5/5 motor strength in Beach's upper and lower extremities.  (*Id.* at 400.)  Further, Beach testified that he was able to work in a heavy exertional job after his June 2007 back surgery and up and until his cervical fusion surgery, is able to mow the lawn, and sleeps nightly on his sofa.  (*Id.* at 53-56, 63-64, 67-68.)  The ALJ appropriately considered such testimony in discounting Beach's subjective complaints of pain and functional limitation.  (*Id.* at 21.)  Thus, taking the entire case record into consideration, substantial evidence supports the ALJ's RFC determination.

**E.     Remaining Findings and Conclusions**

18

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Beach's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 5, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court